**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-6364

COREY LORENZO WOODFOLK,

Petitioner - Appellant,

v.

GARY D. MAYNARD, Sec. of Corr.; THE ATTORNEY GENERAL OF THE STATE OF MARYLAND; DOUGLAS F. GANSLER,

Respondents - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:13-cv-03268-JFM)

Argued: January 24, 2017                     Decided:  May 23, 2017

Before GREGORY, Chief Judge, KING, Circuit Judge, and DAVIS, Senior Circuit Judge.

Vacated and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge King and Senior Judge Davis joined.

**ARGUED**:   Christopher Brett Leach, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant.  Edward John Kelley, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.   **ON BRIEF**: Joanna Silver, OFFICE OF THE FEDERAL DEFENDER, DISTRICT OF MARYLAND, Greenbelt, Maryland; Thomas G. Hungar, David A. Schnitzer, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant.  Brian E. Frosh, Attorney

General of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

———————

GREGORY, Chief Judge:

In March 1988, Corey Lorenzo Woodfolk pleaded guilty in the Circuit Court for Baltimore City to attempted murder and a related firearm offense. Several months after his plea, Woodfolk sought relief from his criminal judgment on the ground that his trial counsel, who represented both Woodfolk and his codefendant, had brokered a deal with the prosecution, whereby Woodfolk would plead guilty to allow his codefendant to go free. Woodfolk alleged that his guilty plea resulted from his trial counsel's disabling conflict of interest and therefore was constitutionally infirm.

Woodfolk's troubling claim has evaded merits review throughout a tortuous history of proceedings in the nearly 30 years since his original plea, culminating in the 28 U.S.C. § 2254 proceedings giving rise to this appeal. In the proceedings below, the district court concluded that Woodfolk's petition was both filed outside the one-year statute of limitations applicable to § 2254 petitions and procedurally defaulted by operation of an independent and adequate state procedural bar. We disagree. For the reasons that follow, we vacate the district court's judgment and remand for further proceedings to address the merits of Woodfolk's ineffective assistance of counsel claim.

I.

On June 14, 1987, Woodfolk and another young man, Cornelius Langley, were involved in an altercation in a parking lot in Baltimore, Maryland. During the altercation, an off-duty police officer observed Woodfolk draw a handgun. According to this officer, Woodfolk pulled the trigger, but the gun did not fire. Woodfolk and Langley were

3

arrested, and Woodfolk was charged with attempted murder. Both Woodfolk and Langley retained attorney Michael Vogelstein to represent them.

Woodfolk later would testify that Vogelstein initially expressed optimism about Woodfolk's chances of success at trial. But on March 4, 1988, while Woodfolk waited in a holding cell in the courthouse on the first day of his scheduled trial, Vogelstein advised Woodfolk that he had arranged an agreement with the State. According to that agreement, Woodfolk would plead guilty; Langley would provide a statement to the court inculpating Woodfolk, and Langley's case would be placed on the stet docket,[1] allowing him to go free. Woodfolk, then 18 years old, was resistant to accepting the agreement, but he eventually acceded to Vogelstein's advice.

That day, Woodfolk pleaded guilty to attempted murder and use of a handgun in the commission of a crime of violence. After accepting his guilty plea, the circuit court sentenced Woodfolk to ten years' imprisonment, with five years suspended, on the attempted murder count and a concurrent term of five years' imprisonment, suspended, on the handgun count, to be followed by five years' probation. Woodfolk did not appeal his conviction based on his guilty plea.

On June 3, 1988, represented by new counsel, Woodfolk filed a motion for reduction or modification of sentence pursuant to Maryland Rule 4-345. In the motion, Woodfolk argued that his criminal judgment was tainted by Vogelstein's disabling

---

[1] A "stet" is "[a]n order staying legal proceedings, as when a prosecutor determines not to proceed on an indictment and places the case on a stet docket. The term is used chiefly in Maryland." Black's Law Dictionary 1640 (10th ed. 2014).

conflict of interest. At an October 1988 hearing, upon the court's advice, Woodfolk withdrew the Rule 4-345 motion and orally moved for a new trial. The court granted Woodfolk's motion for a new trial based on his conflict-of-interest allegations. Pursuant to an agreement between the parties, Woodfolk pleaded guilty that same day to attempted murder and wearing and carrying a handgun. The court sentenced Woodfolk to 15 years' imprisonment, with all but 18 months suspended, on the attempted murder count and a concurrent 18 months' imprisonment on the handgun count, to be followed by five years' probation. Based on the time Woodfolk had already served in prison on these charges, the new judgment ended his active term of incarceration.

Woodfolk was convicted in 1994 on unrelated federal charges and sentenced to 50 years' imprisonment.[2] That conviction triggered a violation of the terms of his state probation. Later that year, Woodfolk pleaded guilty in Maryland circuit court to a probation violation. He was sentenced to three years' imprisonment on the attempted murder count and a concurrent 18 months' imprisonment on the handgun count, to be served consecutively to his federal sentence.

Beginning in 1995, Woodfolk filed various petitions for postconviction relief in Maryland circuit court, attempting to challenge his October 1988 criminal judgment. As relevant to this appeal, Woodfolk filed a postconviction petition in June 1998, which the circuit court denied in 2000. The Maryland Court of Special Appeals summarily denied

---

[2] Woodfolk was granted a reduction in his federal sentence in 2016. His federal incarceration is scheduled to expire in July 2017.

Woodfolk's petition for leave to appeal that judgment in 2001. Woodfolk sought to reopen his postconviction proceedings in 2005, but that petition also was denied.

Woodfolk filed a 28 U.S.C. § 2254 petition in federal district court in 2002, again challenging his October 1988 judgment. The district court dismissed the petition as untimely, and this court denied a certificate of appealability and dismissed the appeal of that judgment. *See Woodfolk v. State of Md. Dep't of Corr.*, 122 F. App'x 78 (4th Cir. 2005) (No. 04-7748).

In January 2006, Woodfolk filed a motion to correct an illegal sentence in the Maryland circuit court, again challenging his October 1988 judgment. That motion was unsuccessful in the circuit court; however, on June 6, 2007, the Court of Special Appeals reversed. It concluded that the circuit court had lacked authority to grant Woodfolk's motion for a new trial in October 1988, as the motion was orally made and untimely. Further, it concluded, the circuit court was prohibited from increasing Woodfolk's sentence when considering his timely Rule 4-345 motion for reduction or modification of sentence. In remanding to the circuit court, the Court of Special Appeals explained that it was

> not . . . vacating appellant's convictions. "In a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court *shall remand the case for resentencing*." Md. Rule 8-604(d)(2) (emphasis added). Under the circumstances of this case, we are persuaded that the appropriate procedure is to reinstate appellant's motion to modify sentence, which the [circuit court in October 1988] suggested he voluntarily withdr[aw], *nunc pro tunc*. That motion can then be considered on remand.

*Woodfolk v. Maryland*, No. 2836, at 9 (Md. Ct. Spec. App. June 6, 2007) (unpublished).

6

On November 12, 2008, the circuit court held a hearing to address the Court of Special Appeals' remand order. The parties discussed at length the procedural posture of the case, the scope of the remand order, and Woodfolk's state postconviction proceedings. Woodfolk requested that the circuit court reimpose the sentence he had originally received in March 1988 to permit him to pursue a postconviction challenge to his March 1988 guilty plea based on Vogelstein's alleged conflict of interest. The court granted this request and reimposed the March 1988 sentence but ran the sentence consecutive to Woodfolk's federal sentence. The circuit court issued a new commitment order that expressly superseded prior commitment orders issued on March 4 and October 28, 1988.

Woodfolk filed a petition for postconviction relief in Maryland circuit court, at the latest, on January 20, 2009,[3] again arguing that his March 1988 plea was constitutionally invalid due to Vogelstein's conflict of interest. The court held a hearing on that petition, at which Woodfolk testified. The State presented no evidence but, in response to Woodfolk's allegations, argued that Woodfolk had procedurally defaulted his claim and that the claim failed on its merits.

The circuit court denied the petition. It concluded that Woodfolk had waived his ineffective assistance claim under Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i) by failing to challenge his guilty plea in an application for leave to appeal his March 1988

---

[3] The parties dispute the precise date on which Woodfolk filed his petition. We need not resolve this issue, however, as we conclude Woodfolk's § 2254 petition is timely whether the petition was filed in November 2008 or January 2009.

7

conviction. Woodfolk filed an application for leave to appeal the circuit court's postconviction ruling, which the Court of Special Appeals summarily denied in January 2012. After Woodfolk filed a motion for reconsideration, clarification, and stay of the mandate, however, the Court of Special Appeals ordered a response from the State to address the application of the procedural bar to Woodfolk's claim. The Court of Special Appeals denied reconsideration based on an alternative subsection of Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i), ruling, sua sponte, that Woodfolk had waived his claim because he did not raise it in his prior postconviction petitions filed in 1998 and 2005. The Court of Appeals denied Woodfolk's petition for a writ of certiorari on October 21, 2013.

On November 1, 2013, Woodfolk filed the instant 28 U.S.C. § 2254 petition, again challenging his March 1988 guilty plea and resulting sentence on the basis of Vogelstein's conflict of interest. The State initially argued only that the petition was untimely, as the limitations period began to run, at the latest, on July 21, 2007, when the Court of Special Appeals' opinion reinstating Woodfolk's Rule 4-345 motion became final. In response, Woodfolk argued that his petition was timely because it was filed within one year of the judgment entered upon his resentencing in November 2008, taking into account statutory tolling for his subsequent state postconviction proceedings.

The district court ordered the parties to submit additional briefing addressing the impact, if any, of *Wall v. Kholi*, 562 U.S. 545 (2011), on the timeliness determination; the merits of Woodfolk's claim; and whether the court could reach the merits of that claim even if the petition was timely. In response, the State argued, among other points, that

Woodfolk's claim was procedurally defaulted under § 7-106(b)(1)(i) and otherwise failed on its merits. Woodfolk countered that the Maryland courts had not relied upon an independent and adequate state law bar that would preclude the claim's review.

The district court denied Woodfolk's petition, concluding that the petition was untimely and that his claim was procedurally defaulted. The court determined that the Court of Special Appeals' June 2007 judgment had not authorized a resentencing, but merely reinstated Woodfolk's Rule 4-345 motion and directed the circuit court to consider the merits of that motion on remand. Relying on *Kholi*, the court held that Woodfolk's revived Rule 4-345 motion did not toll the limitations period and therefore did not render Woodfolk's petition timely. The court also determined that Woodfolk's ineffective assistance claim was procedurally defaulted because the circuit court had deemed it waived under § 7-106(b)(1)(i) due to Woodfolk's failure to file an application for leave to appeal the conviction based on his guilty plea. Woodfolk sought reconsideration pursuant to Fed. R. Civ. P. 59(e), which the district court also denied.

Woodfolk timely appealed. We granted a certificate of appealability and directed briefing on the following issues: (1) Whether the district court had jurisdiction to adjudicate Woodfolk's numerically second § 2254 petition; (2) whether the district court erred in denying Woodfolk's petition as untimely; (3) whether the district court erred in denying Woodfolk's petition as procedurally defaulted; (4) whether the district court

9

abused its discretion in denying Woodfolk's Rule 59(e) motion[4]; and (5) whether the district court erred in denying Woodfolk's § 2254 petition because he was denied effective assistance of counsel due to Vogelstein's conflict of interest. In assessing these issues, we review the district court's denial of habeas relief de novo. *See Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012).

## II.

As a threshold matter, we must consider several jurisdictional issues raised by recent state court action in Woodfolk's case. In November 2016, after the parties had completed formal briefing in this appeal, the Circuit Court for Baltimore City granted Woodfolk's most recent pro se motion to correct an illegal sentence. In accordance with that ruling, the circuit court entered a new commitment order modifying Woodfolk's sentence to run concurrent with, rather than consecutive to, any other outstanding or unserved sentence, including his term of federal incarceration. As a result of this order, Woodfolk's state term of incarceration has expired, and he is scheduled to serve his five-year term of probation upon his release from federal custody.

The State questions whether the circuit court's action renders this appeal moot. We readily conclude that it does not. When Woodfolk filed his § 2254 petition, he satisfied the requirement that he be "in custody" pursuant to the state court judgment that

---

[4] Because Woodfolk does not challenge on appeal the district court's denial of his Rule 59(e) motion, we do not address that issue. *See United States v. Bartko*, 728 F.3d 327, 335 (4th Cir. 2013) (recognizing that issues not raised in opening appellate brief are waived).

he sought to invalidate.  *See* 28 U.S.C. § 2254(a).  It is well settled that the "in custody" requirement applies at the time a petition is filed.  *See, e.g., Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968); *Griffin v. Balt. Police Dep't*, 804 F.3d 692, 697 (4th Cir. 2015). The collateral consequences of Woodfolk's undisturbed convictions also readily satisfy the requirements of Article III jurisdiction.  *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998).  Further, despite the modification of his sentence, Woodfolk remains "in custody," and his petition remains ripe for adjudication in light of the probationary term he still must serve upon his release from federal prison.  *See Maleng v. Cook*, 490 U.S. 488, 490-93 (1989) (per curiam) (concluding that federal prisoner under state detainer was "in custody" pursuant to state court judgment imposing term of imprisonment to be served upon completion of federal sentence); *Jones v. Cunningham*, 371 U.S. 236, 240-42 (1963) (observing that parolee met "in custody" requirement, as relevant inquiry considers whether petitioner's sentence subjects him to restraint on his liberty or imminent threat of such restraint).

The State principally relies on *King v. Moran*, 807 F.3d 154 (6th Cir. 2015), and *Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013), to assert that Woodfolk's appeal may now be moot because the circuit court's sentence modification created a new judgment.  These cases are inapposite, as they consider whether a petitioner whose sentence is modified may file a numerically second habeas petition without triggering the requirement of appellate court preauthorization for "second or successive" petitions under

11

28 U.S.C. § 2244(b).[5] We are aware of no authority requiring Woodfolk to withdraw his pending habeas petition and commence a new, lengthy postconviction process to obtain review of his undisturbed conviction, simply because his sentence has been modified by the trial court. Such a requirement would provide no appreciable benefit and would ill serve the interests in finality and judicial economy that animate § 2254's procedural underpinnings. Thus, satisfied of our jurisdiction to hear this appeal, we proceed to the substance of the parties' remaining contentions.

III.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petition is subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). As relevant here, the one-year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This limitations period also is subject to statutory tolling during the pendency of "a properly filed application for State post-conviction or

---

[5] In an effort to confirm our jurisdiction over Woodfolk's appeal, *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013) (recognizing this court's obligation to address jurisdiction sua sponte), we requested that the parties address whether Woodfolk's numerically second § 2254 petition is a second or successive petition requiring § 2244(b) preauthorization. The parties agree that Woodfolk's prior § 2254 petition challenged a different state court judgment than that underlying the present appeal and, therefore, that his petition does not qualify as second or successive. As we find the parties' arguments on this issue well taken, we decline to address the issue further.

12

other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2).

The parties dispute which of several state court judgments triggered the limitations period under § 2244(d)(1)(A). This disagreement largely centers on the construction of the Court of Special Appeals' June 2007 opinion. Woodfolk contends that the Court of Special Appeals' opinion reinstated his March 1988 conviction and remanded to the circuit court for a resentencing. That resentencing in November 2008, Woodfolk argues, produced a new judgment commencing the one-year limitations period. According to Woodfolk, his subsequent postconviction proceedings tolled the limitations period until less than two weeks before he filed his § 2254 petition, rendering his petition timely.

The State argues that the Court of Special Appeals' opinion revived Woodfolk's March 1988 criminal judgment. Rather than authorizing a de novo resentencing, the State concludes, the Court of Special Appeals merely reinstated Woodfolk's Rule 4-345 motion, returning his case to the status quo before Woodfolk withdrew that motion in exchange for his invalid new trial in October 1988. After the Court of Special Appeals' July 2007 opinion, the State argues, the relevant judgment became the March 4, 1988, judgment imposed following Woodfolk's original guilty plea and sentencing. That judgment became final on April 4, 1988, and the limitations period expired on April 24, 1997, a year after the AEDPA's effective date. *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

Even accepting that Woodfolk would not have had reason to challenge the March 1988 judgment until the Court of Special Appeals' June 2007 opinion, the State contends

13

that Woodfolk's claim became ripe when that opinion issued, placing Woodfolk on notice that the March 1988 judgment was the operative judgment for purposes of the limitations period. Woodfolk did not commence his § 2254 proceedings until January 2009, well over a year later. And although the circuit court ruled on the reinstated Rule 4-345 motion in November 2008, that ruling had no impact on the limitations period, the State claims, as a Rule 4-345 motion is not a species of collateral review that would entitle Woodfolk to statutory tolling.

Although the district court adopted much of the State's reasoning, we conclude that Woodfolk advances the sounder approach. After acknowledging that Woodfolk's sentence was invalid but that it would not vacate Woodfolk's convictions, the Court of Special Appeals explicitly observed that an appellate court reversing a judgment for error in the sentence "shall remand the case for resentencing." Md. Rule 8-604(d)(2). Had the court intended only to reinstate Woodfolk's Rule 4-345 motion, reference to Rule 8-604(d)(2) would have been wholly unnecessary. Although the Court of Special Appeals also stated that it would reinstate the Rule 4-345 motion and directed the circuit court to consider that motion on remand, we do not understand that directive as calculated to define the scope of the remand proceeding. Instead, recognizing that the motion for a new trial granted in October 1988 was intended to remedy the allegations of ineffective assistance of counsel raised in Woodfolk's Rule 4-345 motion, the Court of Special Appeals reinstated that motion to preserve Woodfolk's ability to raise those issues on remand.

Woodfolk's reading of the 2007 opinion is further bolstered by the conduct and statements of both the parties and the Maryland courts in response to the Court of Special Appeals' directive. The transcript of the November 2008 remand hearing reveals that, despite initial debate regarding the case's procedural posture, both the parties and the circuit court treated the hearing as a resentencing proceeding. Notably, Woodfolk's counsel did not request a reduction of Woodfolk's sentence at that hearing, but sought only to reimpose Woodfolk's original sentence, in order to finalize the judgment and permit the court to consider the merits of his state postconviction petition. Counsel's conduct would have made little sense if the only purpose of the November 2008 hearing were to consider Woodfolk's earlier request for a sentence reduction or modification under Rule 4-345. At the conclusion of the hearing, the court issued a new judgment running Woodfolk's sentence consecutive to his federal sentence, which did not exist at the time of his March 1988 judgment.

In subsequent state court proceedings addressing Woodfolk's criminal judgment— including the most recent circuit court decision modifying Woodfolk's sentence in 2016—the Maryland courts have characterized the circuit court's November 2008 hearing as a resentencing proceeding. It is not our prerogative to second-guess the state courts' characterization of their own proceedings, and we find their characterization of the hearing compelling.

Construing the November 2008 hearing as a resentencing, we hold that Woodfolk's petition is timely. It is well understood "that a criminal judgment includes both a conviction and its associated sentence." *United States v. Dodson*, 291 F.3d 268,

15

272 (4th Cir. 2002) (internal quotation marks omitted); *see Deal v. United States*, 508 U.S. 129, 132 (1993) ("A judgment of conviction includes both the adjudication of guilt and the sentence."); *Teague v. Lane*, 489 U.S. 288, 314 n.2 (1989) (plurality opinion) ("As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant."); *see also Greco v. State*, 701 A.2d 419, 423 n.4 (Md. 1997) ("Under Maryland law, a final judgment in a criminal case is comprised of the verdict of guilty, and the rendition of sentence."). The Supreme Court has likewise observed that, for purposes of § 2244(d)(1)(A), "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937) (internal quotation marks omitted). As a result, the limitations period generally does not commence until both the petitioner's conviction and sentence become final for purposes of § 2244(d)(1)(A). *Id*.; *Dodson*, 291 F.3d at 272.

Our opinion in *Dodson* is instructive on this point. There, the appellant was convicted and sentenced on five counts of a multicount indictment. 291 F.3d at 270. On direct appeal, we affirmed the conviction and sentence imposed for one count, vacated the conviction and sentence imposed for another count, affirmed the convictions but vacated the sentences imposed for the remaining counts, and remanded for resentencing. *Id.* Eleven months after we affirmed the judgment imposed on resentencing, the appellant filed a 28 U.S.C. § 2255 motion challenging all counts of conviction. *Id.* We concluded that the motion was timely, as the limitations period commenced when we issued our mandate in his resentencing appeal. *Id.* at 276. In reaching this holding, we

16

observed that "finality is not delayed if an appellate court disposes of all counts in a judgment of conviction but remands for a ministerial purpose that could not result in a valid second appeal." *Id.* at 275. However, where the court remands for a resentencing hearing, which "clearly may supply a defendant with the basis for a nonfrivolous appeal," the limitations period does not begin to run until the final judgment is entered following that resentencing. *Id.* at 275-76.

Although *Dodson* predated *Burton* and specifically addressed the § 2255 context, we find no basis on which to meaningfully distinguish Woodfolk's § 2254 petition. The majority of our sister circuits to consider the issue have concluded under *Burton* that, when a state court defendant has been granted a resentencing, the limitations period under § 2244(d)(1)(A) runs from the judgment entered upon resentencing—even if, as here, the defendant's habeas petition challenges the underlying conviction. *See Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012); *Scott v. Hubert*, 635 F.3d 659, 666 (5th Cir. 2011); *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292-93 (11th Cir. 2007). *But see Prendergast v. Clements*, 699 F.3d 1182, 1186-88 (10th Cir. 2012) (concluding that petitioner's habeas challenges to original conviction were untimely despite intervening resentencing upon probation violation). Applying an identical definition of "judgment" in the context of § 2244(b), all but one circuit to consider the issue, including this court, have determined that a numerically second habeas petition that is the first to challenge a new judgment following a resentencing is not a "second or successive" petition requiring appellate court preauthorization, whether the petition challenges the new sentence or the undisturbed, underlying conviction. *See In re Gray*, 850 F.3d 139, 142-43 (4th Cir. 2017)

(reaching holding and collecting cases). As we acknowledged in *Gray*, "when a defendant is resentenced, he or she is confined pursuant to a new judgment even if the adjudication of guilt is undisturbed." *Id.* at 142. We find that conclusion controlling here. In light of *Burton*, *Dodson*, and *Gray*, we hold that Woodfolk's limitations period commenced on December 12, 2008, when the judgment entered upon his November 2008 resentencing became final. As Woodfolk's postconviction proceedings statutorily tolled the limitations period from at least January 20, 2009 through October 21, 2013, his petition is timely.[6]

## IV.

Having overcome the time bar, Woodfolk may not obtain review of the merits of his claim unless he also can overcome the district court's finding of procedural default. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Principles of comity accordingly dictate that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Jones v. Sussex I*

---

[6] Because we conclude that Woodfolk's petition is timely on this basis, we need not consider Woodfolk's alternative argument that his Rule 4-345 motion tolled the limitations period under *Kholi*.

*State Prison*, 591 F.3d 707, 715 (4th Cir. 2010) (internal quotation marks omitted). Review of a procedurally defaulted claim is pretermitted unless the petitioner establishes either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "a fundamental miscarriage of justice." *Lewis v. Wheeler*, 609 F.3d 291, 309 (4th Cir. 2010) (quoting *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006) (internal quotation marks omitted).

"A federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Barnes v. Thompson*, 58 F.3d 971, 974 n. 2 (4th Cir. 1995)). However, we are obliged to ensure that the procedural rule applied by the state courts is adequate to preclude federal review of the underlying claim. *Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir. 2000). Whether a state procedural rule is adequate to preclude federal review is a question of federal law. *Beard v. Kindler*, 558 U.S. 53, 60 (2009).

A state rule is "adequate" if it is "firmly established and regularly followed." *Johnson v. Lee*, 136 S. Ct. 1802, 1805 (2016) (internal quotation marks omitted); *see Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) ("[A] state rule is adequate if it is firmly established . . . and regularly and consistently applied by the state court." (citations and internal quotation marks omitted)). The relevant inquiry is not whether the procedural rule is applied in all cases, but "whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous." *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000). Because procedural default is an affirmative defense, the

State bears the burden to establish the adequacy of a state procedural bar. *Jones*, 591 F.3d at 716.

A.

Woodfolk and the State again dispute which of several state court decisions provides the operative procedural bar. As we have previously described, the circuit court concluded that Woodfolk had waived his ineffective assistance claim because he had not challenged his guilty plea on that ground by filing an application for leave to appeal his conviction based on his guilty plea. *See* Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i)(4). After summarily denying Woodfolk's application for leave to appeal the circuit court's decision, the Court of Special Appeals accepted supplemental briefing in connection with Woodfolk's motion for reconsideration, clarification, and stay of the mandate, and it directed the State to address the propriety of applying this bar to Woodfolk's ineffective assistance claim. The Court of Special Appeals ultimately denied Woodfolk's motion by referencing a different state procedural bar: Woodfolk's failure to raise his ineffective assistance claim in his 1998 and 2005 postconviction proceedings. *See* Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i)(6).

To determine the basis upon which a state court rejected a habeas claim, a federal habeas court must "'look through' any intervening summary decisions to the 'last reasoned decision' of a state court addressing the claim." *Tice v. Johnson*, 647 F.3d 87, 106 (4th Cir. 2011) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991)). "When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review," *Ylst* directs the federal habeas court to "'look through' the

20

unexplained affirmance . . . , assuming that the summary appellate decision rests on the same ground." *Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 525–26 (4th Cir. 2016) (quoting *Ylst*, 501 U.S. at 803-04, 806).

The circuit court's opinion applying § 7-106(b)(1)(i)(4) provided a reasoned decision on Woodfolk's ineffective assistance claim. The State, like the district court, relies solely on this decision in advocating Woodfolk's procedural default. Woodfolk contends, however, that the Court of Special Appeals' subsequent denial of reconsideration constitutes the last reasoned decision on the claim, as it provided a basis for rejecting the claim that was different from that relied upon by the circuit court. *See Ylst*, 501 U.S. at 805 (directing federal habeas court to look to "the last *explained* state-court judgment").

Woodfolk's argument holds limited water. Generally, the discretionary denial of review by an intermediate appellate court is not a "judgment" that would determine the procedural bar used to deny a claim, but instead is a refusal to consider the claim. *See id.* at 805-06; *Felton v. Barnett*, 912 F.2d 92, 94-95 (4th Cir. 1990). Had the Court of Special Appeals simply denied Woodfolk's application for leave to appeal, the circuit court's decision relying on § 7-104(b)(1)(i)(4) clearly would provide the relevant judgment. However, the Court of Special Appeals went further, directing the parties to provide additional material regarding the application of this procedural bar and, after considering the new material, providing an analysis that differed entirely from that articulated in the lower court's decision. *Cf. Nicolas v. Attorney Gen. of Md.*, 820 F.3d 124, 130 n.3 (4th Cir. 2016) ("[S]ilence implies consent, not the opposite—and courts

generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below." (quoting *Ylst*, 501 U.S. at 804)). On the other hand, the Court of Special Appeals' additional reasoning was contained in an order that itself declined to reconsider that court's decision not to grant appellate review of the circuit court's opinion.

Adding further to this complexity, the Court of Special Appeals' denial of leave to appeal left intact the circuit court's prior reasoned decision. And its subsequent denial of reconsideration did not expressly repudiate reliance on § 7-106(b)(1)(i)(4). Of course, "it is not sufficient that the state court *could* have applied a procedural default under state law; it must actually have done so." *Skipper v. French*, 130 F.3d 603, 609 (4th Cir. 1997). But courts frequently provide alternative bases for rejecting a claim, and may do so without undermining reliance on either ground. *Cf. Sharpe,* 593 F.3d at 377 ("Nor is a procedural default waived when a state court reaches the merits of a federal claim as an alternative basis for dismissal."). The Court of Special Appeals may have intended to proffer § 7-106(b)(1)(i)(6) as an alternative basis for barring review of Woodfolk's claim, but both the procedural posture and the Court of Special Appeals' limited explanation render its intent ambiguous.

In any event, we need not resolve this quandary here. As we will explain, under the exceptional circumstances presented by Woodfolk's case, we conclude that neither

22

procedural bar is adequate to preclude federal review of his ineffective assistance of counsel claim.[7]

B.

Maryland's Uniform Postconviction Procedure Act provides that, except upon a showing of "special circumstances," an allegation of error raised in a postconviction petition is deemed waived:

> when a petitioner could have made but intelligently and knowingly failed to make the allegation:
>
>> 1. before trial;
>>
>> 2. at trial;
>>
>> 3. on direct appeal, whether or not the petitioner took an appeal;
>>
>> 4. in an application for leave to appeal a conviction based on a guilty plea;
>>
>> 5. in a habeas corpus or coram nobis proceeding began by the petitioner;
>>
>> 6. in a prior petition under this subtitle; or
>>
>> 7. in any other proceeding that the petitioner began.

Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i).[8]  The Maryland appellate courts have construed this provision to permit the waiver of a fundamental right only upon a

---

[7] Because we conclude that the procedural bars upon which the Maryland courts relied do not preclude federal review of Woodfolk's claim, we need not address his alternative argument that he has demonstrated cause and prejudice to excuse a procedural default.

[8] At the time of Woodfolk's 1988 pleas and his original failure to file an application for leave to appeal his guilty plea, waiver of postconviction claims was (Continued)

23

determination that the waiver was knowing and intelligent. *See State v. Gutierrez*, 837 A.2d 238, 243-44 (Md. Ct. Spec. App. 2003). A petitioner's failure to raise a claim that could have been raised in any of the enumerated prior proceedings gives rise to a rebuttable presumption that the petitioner knowingly and intelligently failed to raise the claim in that prior proceeding. Md. Code Ann., Crim. Proc. § 7-106(b)(2). Where a petitioner knowingly and intelligently failed to raise an issue, he may obtain review of the waived claim only if he satisfies his burden to demonstrate "special circumstances." *See Curtis v. State*, 395 A.2d 464, 468 (Md. 1978).

We easily dispatch the Court of Special Appeals' reliance on § 7-106(b)(1)(i)(6) to preclude Woodfolk's claim. First, the bar's factual premise, that Woodfolk had failed to raise his ineffective assistance challenge in prior postconviction proceedings, is flatly contradicted by the state court record. In fact, Woodfolk did attempt in his 1998 postconviction petition to raise allegations related to Vogelstein's conflict. Although Woodfolk's counsel filed an amended petition more closely tailoring his arguments to the October 1988 judgment, the circuit court squarely foreclosed Woodfolk's reliance on any claim related to the March 1988 guilty plea. The court specifically held that "[a]ny allegations relating to the first plea, or relating to [Woodfolk's] counsel for the first plea, were waived when [Woodfolk], with different counsel, was granted a new trial, during

governed by Md. Code Ann., Art. 27, § 645A(c), the predecessor to § 7-106(b)(1)(i). That earlier statute was recodified as § 7-106(b)(1)(i) without substantive change in 2001. *See State v. Smith*, 117 A.3d 1093, 1111 n.12 (Md. 2015).

which he pled guilty a second time."[9]  *Woodfolk v. State*, No. 28735804, at 8 (Cir. Ct. Balt. City Nov. 8, 2000) (unpublished order).  While we may not second-guess a state court's application of its own procedural rules, *see Sharpe*, 593 F.3d at 377, we also are not at liberty to accept findings that patently conflict with the face of the record.

In any event, the application of § 7-106(b)(1)(i)(6) is inadequate to bar review under the unusual circumstances of Woodfolk's case.  A procedural bar is inadequate to preclude federal review under certain rare conditions, such as "when 'discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law.'"  *Walker*, 562 U.S. at 320 (quoting 16B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4026, p. 386 (2d ed. 1996)).  Even a firmly established and regularly followed state rule will not preclude review in "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

Section 7-106(b)(1)(i)(6) serves to bar a claim only if the petitioner had the opportunity to raise the claim in a prior postconviction proceeding.  *See, e.g., McElroy*, 617 A.2d at 1070-71 (addressing § 645A); *Wyche v. State*, 454 A.2d 378, 380 (Md. Ct.

---

[9] It is unclear from the circuit court's reasoning whether it found Woodfolk's ineffective assistance claim waived automatically by operation of the new trial granted in October 1988 or as an express condition of Woodfolk's agreement with the State to obtain a new trial and replead.  Regardless, any such bar was swept away by the Court of Special Appeals' June 2007 opinion vacating the circuit court's grant of a new trial. Under either scenario, Woodfolk reasonably could not have raised his ineffective assistance claim in a postconviction proceeding prior to the March 1988 plea's restoration in June 2007.

Spec. App. 1983) (same). Woodfolk could not have sustained a challenge to the March 1988 guilty plea and resulting judgment at any of his postconviction proceedings prior to July 2007, as those contentions were rendered moot under state law by the elimination of his March 1988 convictions in October 1988. *See Cottman v. State*, 912 A.2d 620, 628 (Md. 2006) (recognizing that grant of motion for new trial leaves action "in the same condition as if no previous trial had been held," rendering moot any appellate challenge to original trial (internal quotation marks omitted)). The Court of Special Appeals' finding of waiver directly conflicts with the language of § 7-106(b)(1)(i)(6) prohibiting consideration of claims that could have been raised previously. *See Keel v. French*, 162 F.3d 263, 268 (4th Cir. 1998) (rejecting procedural bar based on regularly applied procedural rule that was applied in manner "directly in conflict with the language of the applicable state statute at the time of the offense"). Further, penalizing Woodfolk for not continuing to raise a futile claim that the state postconviction court had already deemed unreviewable constitutes an exorbitant exercise of the state court's discretion. *See Hedrick*, 443 F.3d at 362 (discussing exorbitant application); *Wilson v. Ozmint*, 357 F.3d 461, 466 (4th Cir. 2004) (same). We therefore conclude the Court of Special Appeals' application of § 7-106(b)(1)(i)(6) is inadequate to bar federal review of Woodfolk's claim.

## C.

Woodfolk also contends that the circuit court's reliance on § 7-106(b)(1)(i)(4) is inadequate to bar consideration of his ineffective assistance claim on federal habeas review. We agree. At the outset, we do not question the State's assertion that, in the

26

mine-run case, § 7-106(b)(1)(i)(4) constitutes an independent and adequate state law ground precluding federal habeas review. We previously have held that the predecessor statute to § 7-106(b)(1)(i) is an independent and adequate state law ground giving rise to a procedural default. *See Oken v. Corcoran*, 220 F.3d 259, 264-65 (4th Cir. 2000) (analyzing Md. Code Ann., Art. 27, § 645A(c)).

Nevertheless, the State's premise sweeps too broadly in this case. The "consistent or regular application of a state rule of procedural default does not require that the state court show an undeviating adherence to such rule admitting of no exception," as long as that rule "has, as a general rule, been applied in the vast majority of cases." *Hedrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006) (quoting *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999)) (alterations and internal quotation marks omitted). However, where a state procedural bar has "*not* been regularly and consistently applied by the state court to a particular type of federal constitutional claim, [it] cannot be considered an adequate state law ground barring federal court review of the merits of that claim." *Brown v. Lee*, 319 F.3d 162, 170 (4th Cir. 2003); *see McCarver*, 221 F.3d at 589.

The Maryland courts have long recognized that ineffective assistance of counsel claims generally will not be considered on direct appeal, but instead should be raised in postconviction proceedings. *See, e.g., Stewart v. State*, 570 A.2d 1229, 1234 (Md. 1990) (declining to consider ineffective assistance claim on direct appeal, observing "that the desirable procedure for determining claims of inadequate assistance of counsel, when the issue was not presented to the trial court, is by way of the Post Conviction Procedure Act"); *Harris v. State*, 455 A.2d 979, 983 (Md. 1983) (declining to consider on direct

27

appeal claim that counsel was ineffective with respect to negotiation and entry of guilty plea). A narrow exception permits consideration of an ineffective assistance claim on direct appeal "where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim," such that "there is no need for a collateral fact-finding proceeding." *In re Parris W.*, 770 A.2d 202, 207 (Md. 2001); *see Smith v. State*, 905 A.2d 315, 324-25 (Md. 2006) (discussing rule and collecting cases). The Maryland courts have emphasized, however, that such cases are "extremely rare" and occur "only when the facts in the trial record sufficiently illuminate the basis for the claim." *Crippen v. State*, 52 A.3d 111, 120 (Md. 2012) (internal quotation marks omitted); *see Mosley v. State*, 836 A.2d 678, 686-90 (Md. 2003) (discussing limited nature of exception); *Pugh v. State*, 654 A.2d 888, 897 (Md. Ct. Spec. App. 1995) (acknowledging that ineffective assistance of counsel can be considered on direct appeal "in unusual circumstances").

Conflict-of-interest claims, like Woodfolk's, are treated in the same manner as other ineffective assistance claims in this context. Some ineffective assistance claims based on purported conflicts of interest are appropriate for consideration on direct review. *See, e.g.*, *Duvall v. State*, 923 A.2d 81, 98-100 (Md. 2007) (recognizing that conflict-of-interest claims may be addressed on direct appeal when counsel timely raised conflict during pretrial proceedings and trial court's inadequate response to identified conflict caused obvious adverse effect on defendant's representation); *Smith*, 905 A.2d at 325 (addressing, on direct appeal, counsel's violation of attorney-client privilege created by conflict in duties to client and to trial court, as trial record revealed all relevant facts and

"a collateral evidentiary hearing . . . would be superfluous"). But postconviction review remains the appropriate vehicle for raising such claims unless the trial record patently reveals the basis for the claim. *See Mosley*, 836 A.2d at 689 n.11 (observing that conflict-of-interest claim should be reserved for postconviction proceedings "where the trial record does not conclusively reflect how the conflict of interest adversely affected counsel's performance," and collecting cases); *Pugh*, 654 A.2d at 897-99 (discussing rule and collecting cases).

Even in the narrow subset of ineffective assistance claims cognizable on direct review, the mere fact that a petitioner may be permitted to raise an ineffective assistance of counsel claim on direct appeal does not *require* him to do so in order to preserve review of that claim in postconviction proceedings. The State points to no case in which a defendant waived consideration of an ineffective assistance claim in a postconviction petition by failing to raise the claim on direct review. Maryland authority squarely contradicts such a premise. *See, e.g., Johnson v. State*, 439 A.2d 542, 559 (Md. 1982) ("[U]nder the settled rules of appellate procedure, a claim of ineffective assistance of counsel not presented to the trial court generally is not an issue which will be reviewed initially on direct appeal . . . , although competency of counsel may be raised for the first time at a section 645A post conviction proceeding." (citations and internal quotation marks omitted)), *overruled on other grounds by Hoey v. State*, 536 A.2d 622 (Md. 1988); *Davis v. State*, 400 A.2d 406, 414 (Md. 1979) (acknowledging that ineffective assistance claim not raised on direct appeal "was squarely before the post conviction court," as ineffective assistance "may be raised for the first time under post conviction

procedures"); *Cooper v. State*, 407 A.2d 756, 762 (Md. Ct. Spec. App. 1979) (recognizing that, although ineffective assistance claims were not raised in trial court and therefore were not preserved for direct appeal, they could be raised in postconviction petition); *State v. Merchant*, 271 A.2d 752, 755 (Md. Ct. Spec. App. 1970) ("It is well-established that in a post conviction hearing a petitioner is not precluded from raising the issue of incompetency of counsel because he failed to raise the issue at trial or pursue it on appeal."); *O'Connor v. Warden, Md. Penitentiary*, 253 A.2d 434, 437 (Md. Ct. Spec. App. 1969) ("It has been repeatedly held that the allegation that trial counsel was incompetent need not be raised either at trial or on direct appeal in order to be available as a ground for relief under a first petition instituted under the Post Conviction Procedure Act. In other words, the failure to raise the contention . . . on appeal does not result in its waiver.").

The State argues that, because Woodfolk pled guilty, he was required to preserve any ineffective assistance challenges to his guilty plea, for review on federal habeas or otherwise, by filing an application for leave to appeal his conviction. We have found little authority to support this contention. To be sure, as the State observes, a Maryland defendant convicted pursuant to a guilty plea may challenge his criminal judgment on direct appeal by filing an application for leave to appeal within 30 days after entry of the criminal judgment. *See* Md. Code Ann., Cts. & Jud. Proc. § 12-303(e); Md. R. 8-204(b)(2)(A); *Cubbage v. State*, 498 A.2d 632, 636-37 (Md. 1985) (discussing rule). Under § 7-106(b)(1)(i)(4), a defendant's failure to file an application for leave to appeal the conviction based on his guilty plea generally bars claims that he could have raised in

that application, unless the defendant can demonstrate special circumstances or an unknowing or unintelligent waiver. *McElroy v. State*, 617 A.2d 1068, 1073-74 (Md. 1993); *see Walker v. State*, 684 A.2d 429, 434-36 (Md. 1996).

Tellingly, however, the authorities upon which the State relies do not address the application of § 7-106(b)(1)(i)(4) to ineffective assistance of counsel claims.[10] While a similar rule exists under § 7-106(b)(1)(i)(3) to bar postconviction claims that could have been raised on direct appeal from a criminal trial, the settled authority permitting review of ineffective assistance claims for the first time in postconviction proceedings demonstrates that this bar is inapplicable to ineffective assistance claims. The State identifies no meaningful distinction, for purposes of applying the waiver rule, between an appeal as of right from a conviction after trial and an application for leave to appeal a conviction based on a guilty plea. In considering ineffective assistance claims on postconviction review, the Court of Appeals of Maryland appears to place no particular emphasis on the fact that the conviction arises from a guilty plea. Rather, it has held that an ineffective assistance claim related to a guilty plea may be raised for the first time in a postconviction proceeding even though it was not raised on direct appeal as of right from

---

[10] Although *Curtis* recognized that the waiver principles codified in § 645A(c) may apply to ineffective assistance claims, that case did not involve a guilty plea and addressed an alleged waiver occasioned by the petitioner's failure to raise his ineffective assistance claim in a prior postconviction proceeding. *See* 395 A.2d at 467, 474-75. The Court of Appeals remarked that "[t]rial counsel's failure to raise the matter of his own inadequacy . . . on direct appeal would not constitute a waiver under the decisions of the Court of Special Appeals." *Id.* at 467 n.4 (citing *Merchant*, 271 A.2d at 755).

31

a death sentence. *Harris*, 455 A.2d at 983.[11] Similarly, nothing in the Maryland authority addressing postconviction waiver suggests an intelligible basis for treating ineffective assistance claims raised in a direct appeal as of right differently from those raised on direct appeal by way of an application for leave to appeal. This seems to us a distinction without a difference, and the State points to no persuasive authority suggesting that the Maryland courts apply § 7-106(b)(1)(i)(4) differently from § 7-106(b)(1)(i)(3) to ineffective assistance claims.[12]

---

[11] In a subsequent proceeding, the Court of Appeals determined that a defendant need not delay consideration of an ineffective assistance claim to a postconviction petition under the unique set of facts in which the ineffective assistance of counsel claim has been adequately presented and resolved in a collateral evidentiary proceeding on the defendant's presentencing motion to withdraw his guilty plea. *Harris v. State*, 474 A.2d 890, 892-94 (Md. 1984). However, that posture is readily distinguishable from Woodfolk's case, and nothing in the court's opinion suggested that failure to raise the claim in such a collateral proceeding would have affected the defendant's ability to obtain review of the ineffective assistance claim in a postconviction petition.

[12] The State observes that the circuit court advised Woodfolk during his October 1988 plea colloquy that his guilty plea would waive his right to an appeal and likely would limit any application for leave to appeal his conviction to four grounds, including complaints about his trial counsel. The advice Woodfolk received in October 1988 is of little moment to his alleged procedural default occurring months earlier. It is unclear whether a defendant must be advised during a plea proceeding that he will be limited to these same four grounds in seeking leave to appeal a guilty plea. *See, e.g.*, *State v. Castellon-Gutierrez*, 18 A.3d 968, 979-80 (Md. Ct. Spec. App. 2011) (describing colloquy discussing four limited grounds upon which defendant could apply for leave to appeal his guilty plea, but rejecting claim that failure to provide this information rendered plea colloquy inadequate). But even if such advice is mandatory, granting permission to raise a claim against trial counsel neither renders that claim cognizable on direct review nor imposes a requirement that the claim must be raised on direct appeal in order to be heard on the merits. Absent clearer authority requiring a defendant to raise an ineffective assistance claim in an application for leave to appeal to preserve that claim for postconviction review, any passing reference to ineffective assistance claims during a (Continued)

32

Crucially, the State fails to point to a single case in which the Maryland courts have barred review of an ineffective assistance claim on postconviction review because it was not raised in an application for leave to appeal a conviction based upon a guilty plea. Our research reveals a paucity of relevant authority. We have identified several cases, each arising in the § 2254 context, observing that a Maryland postconviction court applied § 7-106(b)(1)(i)(4) to bar an ineffective assistance of counsel claim. *See DeBlois v. Warden*, Civil No. CCB-1-100, 2014 WL 7447325, at *5 (D. Md. Dec. 31, 2014) (failure to raise claim on direct appeal from *Alford*[13] plea); *Rogers v. Maryland*, Civil Action No. JFM-10-2224, 2011 WL 1769804, at *1, *3-4 (D. Md. May 9, 2011) (finding one of two ineffective assistance claims waived for failure to file application for leave to appeal conviction based on guilty plea); *Schmidt v. Rouse*, Civil Action No. AW-09-752, 2010 WL 481068, at *1, *4, *7 (D. Md. Feb. 3, 2010) (applying waiver based on failure to file application for leave to appeal guilty plea but alternatively addressing claim on merits); *see also Miller v. State*, 77 A.3d 1030, 1040 (Md. 2013) (suggesting that § 7-106(b)(1)(i)(4) would bar ineffective assistance claim in coram nobis proceeding, but exercising discretion to address claim's merits based on "unique circumstances"). Notably, these cases do not appear to involve those claims that would fall within the

---

guilty plea colloquy simply is insufficient to create a firmly-established or regularly-applied procedural bar.

[13] *North Carolina v. Alford*, 400 U.S. 25 (1970).

33

recognized exception to the general rule prohibiting review of ineffective assistance claims on direct appeal.

Our review has revealed more cases, also primarily arising in the § 2254 context, in which the Maryland courts considered ineffective assistance claims on the merits on postconviction review, even when they applied § 7-106(b)(1)(i)(4) to other types of claims within the same postconviction petition. *See Johnson v. Smith*, 981 F.Supp. 944, 946 (D. Md. 1997) (following petitioner's entry of *Alford* plea from which no application for leave to appeal was filed, postconviction court found challenges to trial court's acceptance of guilty plea waived but addressed merits of related ineffective assistance claims); *Stemple v. Warden*, Civil Action No. CCB-14-1500, 2016 WL 6996736, at *1, *6-14 (D. Md. Nov. 30, 2016) (postconviction court addressed merits of ineffective assistance claims, including conflict-of-interest claim, despite defective application for leave to appeal guilty plea); *Hopkins v. Goins-Jhnson*, Civil Action No. PWG-13-3336, 2016 WL 5477560, at *2-4, *9 (D. Md. Sept. 29, 2016) (postconviction court barred challenge to guilty plea from which no application for leave to appeal was filed but addressed merits of ineffective assistance claim related to counsel's performance prior to his guilty plea); *Roberts v. Hejirika*, Civil Action No. AW-11-cv-868, 2013 WL 2154797, at *2-3, *8 (D. Md. May 16, 2013) (postconviction court addressed merits of ineffective assistance claims not raised in application for leave to appeal guilty plea); *Blevens v. Corcoran*, No. RWT-11cv2690, 2012 WL 3779170, at *3, *6-12 (D. Md. Aug. 30, 2012) (same); Brief and Appendix of Appellee at Apx. 1-17, *Matthews v. State*, 13 A.3d 834 (Md. Ct. Spec. App. Dec. 3, 2010) (No. 2801), 2010 WL 6526235 (providing

34

unpublished postconviction opinion addressing merits of ineffective assistance claims, including claims that would impugn validity of guilty plea, despite finding related substantive challenges to guilty plea waived under § 7-106(b)(1)(i)(4)). Although these cases are unpublished and long postdate Woodfolk's March 1988 judgment and purported procedural default, they strengthen the weight of authority indicating that ineffective assistance claims are not barred by § 7-106(b)(1)(i)(4) in the vast majority of cases or in accordance with any reliable methodology.

We find further support for our conclusion from *McCarver*, in which we considered the adequacy of a similar North Carolina procedural rule barring postconviction review of a claim that could have been, but was not, raised on direct appeal. 221 F.3d at 588-90. The North Carolina Superior Court had relied upon this rule to find the habeas petitioner's ineffective assistance claim procedurally barred on state postconviction review. *Id.* at 589. Recognizing the North Carolina Superior Court's explicit finding that the petitioner could have raised his claim on direct appeal, we concluded that the adequacy of the bar must be evaluated by reference to whether the rule was regularly and consistently applied to procedurally analogous claims—that is, ineffective assistance claims that could have been raised on direct appeal. *Id*. Although we observed that ineffective assistance of counsel claims ordinarily are more appropriately raised in postconviction proceedings under North Carolina law, we rejected the petitioner's assertion that those claims should be treated as categorically different from other types of claims that could be barred by the waiver rule. *Id.* We found the procedural bar adequate after determining that the petitioner's claim fell within a

35

recognized exception to the general rule precluding ineffective assistance claims on direct appeal, and that the North Carolina courts applied the bar to such exceptional cases. *Id.* at 589-90.

*McCarver* is distinguishable from Woodfolk's case on several fronts. First, the circuit court never found that Woodfolk's ineffective assistance claim was within the narrow class of ineffective assistance claims that could be raised on direct appeal under Maryland law. Rather, the court appeared to find the opposite, specifically acknowledging that "a post conviction proceeding is the proper forum for ineffective assistance of counsel claims" but determining that Woodfolk's claim was barred only because he "must follow proper procedures to be considered for post conviction relief." *Woodfolk v. State*, No. 28735804, at 6 (Cir. Ct. Balt. City filed Feb. 1, 2011 & entered Feb. 7, 2011) (unpublished opinion). In so doing, the court implied that, in order to pursue his ineffective assistance claim in a postconviction proceeding, Woodfolk had to undertake the futile effort of filing an unripe claim on direct appeal, where, at best, it would be rejected as premature or, at worst, barred from future consideration after being decided on an inadequate record. *See* Md. Code Ann., Crim. Proc. §§ 7-102(b)(2), 7-106(a)(1) (recognizing that petitioner may not seek postconviction relief based on claim previously litigated on direct appeal). In this regard, the circuit court's decision patently conflicts with the well-articulated, black letter law permitting ineffective assistance claims to be raised for the first time in a Maryland postconviction proceeding.

Further, unlike the state rule at issue in *McCarver*, those cases in which § 7-106(b)(1)(i)(4) has been applied to bar ineffective assistance claims do not appear to

involve exceptional claims appropriate for consideration on direct appeal. Nor have those cases articulated any other exception to the general rule reserving ineffective assistance claims for postconviction review. The Maryland courts have provided no clear authority resolving the apparent tension between § 7-106(b)(1)(i)(4) and the longstanding rule permitting ineffective assistance claims to be raised for the first time on postconviction review. Nor have the Maryland courts clearly approved the application of § 7-106(b)(1)(i)(4) to ineffective assistance claims.

We acknowledge that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." *Walker v. Martin*, 562 U.S. 307, 311 (2011). We also recognize that "[a] discretionary rule ought not be disregarded automatically upon a showing of seeming inconsistencies" in its application. *Id.* at 320. Here, however, the application of the state procedural bar to Woodfolk's ineffective assistance claim facially conflicts with Maryland's well established and apparently unqualified authority authorizing merits consideration of that type of claim. Even assuming that the Maryland postconviction courts simply exercised their judicial discretion in prior cases to conduct merits review of ineffective assistance claims that otherwise would have been barred by § 7-106(b)(1)(i)(4)—a premise which, we have explained, is not well supported by extant authority—any such discretionary consideration of the merits appears to swallow the general procedural rule.

While we do not contest the state courts' authority to impose this bar, as a matter of state law, on Woodfolk and other petitioners, we conclude that the State falls far short

37

of satisfying its burden to demonstrate that § 7-106(b)(1)(i)(4) is applied to the vast majority of ineffective assistance claims not raised on direct review from a guilty plea. The State's failure to establish that the bar is regularly and consistently applied to claims analogous to Woodfolk's claim renders the bar inadequate and, consequently, permits a federal habeas court to address his claim of ineffective assistance of counsel.

V.

In denying Woodfolk's petition on procedural grounds, the district court did not opine as to the merits of Woodfolk's claim. Relying on *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), Woodfolk requests that we address the substance of his ineffective assistance claim in the first instance and direct the district court to grant him habeas relief.

To establish ineffective assistance of counsel based on a conflict of interest that was not raised before the trial court, the defendant must demonstrate that (1) counsel operated under "an actual conflict of interest" and (2) this conflict "adversely affected his lawyer's performance." *United States v. Dehilinger*, 740 F.3d 315, 322 (4th Cir. 2014) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). If the defendant satisfies this showing, prejudice is presumed, and the defendant need not demonstrate a reasonable probability that, but for counsel's conflicted representation, the outcome of the proceeding would have been different. *United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2010).

A defendant demonstrates an actual conflict when he shows that his counsel "actively represented conflicting interests." *Sullivan*, 446 U.S. at 350. "A defendant has established an adverse effect if he proves that his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would adversely affect another." *Mickens v. Taylor*, 240 F.3d 348, 360 (4th Cir. 2001) (en banc); *see Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005). We have articulated a three-part standard for demonstrating adverse effect, which requires the defendant to (1) "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued," (2) show that this strategy "was objectively reasonable under the facts of the case known to the attorney at the time," and (3) show "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Dehlinger*, 740 F.3d at 322 (quoting *Mickens*, 240 F.3d at 361).

The adverse effect inquiry is often fact dependent, mandating due deference to the factfinder. *See United States v. Nicholson*, 475 F.3d 241, 252 (4th Cir. 2007) (internal quotation marks omitted). Further, because an actual conflict of interest requires not only a theoretically divided loyalty, but also a conflict that actually affected counsel's performance, the actual conflict and adverse effect inquiries frequently are intertwined. *Jones*, 401 F.3d at 267.

According to Woodfolk, the State has not contested that Vogelstein represented Woodfolk and Langley as joint defendants on related charges and advised Woodfolk to plead guilty in exchange for Langley's more lenient treatment. These facts, Woodfolk argues, readily support the existence of both an actual conflict and an adverse effect.

Woodfolk proffers several alternative strategies that he claims counsel reasonably could have pursued, but declined to pursue, because of the conflict. Contending that the undisputed record readily establishes these findings, Woodfolk argues that the claim is ripe for consideration.

In opposition, the State contends that Woodfolk's claim is not yet ripe and that Woodfolk's allegations, standing alone, are insufficient to warrant habeas relief. The State argues that the sentences counsel procured for Woodfolk at both his March 1988 and October 1988 proceedings, as well as Woodfolk's decision to plead guilty a second time, preclude a finding of adverse effect.

While the facts in the available record raise disturbing questions regarding the representation Woodfolk received during his March 1988 plea proceedings, we conclude that this case falls outside the unusual circumstances in *Bostick* that would permit us to resolve the claim in the first instance. In *Bostick*, we addressed the merits of an ineffective assistance claim not passed upon by the district court when the state did not challenge our authority to address the claim, the facts were undisputed, and the "unambiguous factual record" clearly supported one result. 589 F.3d at 166. Woodfolk's allegations, if true, readily support his contention that his counsel labored under an actual conflict. *See United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991) ("When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one."); *Hoffman v. Leeke*, 903 F.2d 280, 286 (4th Cir. 1990) ("It is difficult for us to understand, and indeed we do not, how advising one client to give a statement and testify

40

to the essential elements of a crime allegedly committed by a second client is not a conflict of interest."). However, those allegations are supported largely by Woodfolk's own testimony and affidavit, which may be tempered by other evidence of record, such as the transcript of his October 1988 guilty plea proceeding and evidence shedding light upon the strength of the State's case against him.

The parties seemingly agree that Vogelstein represented both Woodfolk and Langley on related charges, and that Langley received a stet while Woodfolk was sentenced to a term of incarceration. The parties dispute, however, both the extent to which this apparent conflict impacted counsel's representation of Woodfolk and the reasonableness of the remaining alternative strategies Woodfolk proffers. While we express no opinion as to the ultimate merits of Woodfolk's claim, we reserve the appropriate resolution of these factual questions for the district court on remand.

## VI.

For nearly 30 years, Woodfolk has contended that his guilty plea was procured by an attorney who served two masters, thereby betraying his duty of loyalty to Woodfolk in exchange for a favorable outcome for Woodfolk's codefendant. No court, state or federal, has ever addressed the substance of these troubling allegations. Having found no time bar or adequate state procedural bar to preclude a review of the claim on its merits, we believe the time has come for a fair adjudication of Woodfolk's claim. Accordingly,

41

we vacate the district court's judgment denying Woodfolk's § 2254 petition and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*